## THE CITY AND COUNTY OF HONOLULU *v.* VICTORIA WARD.

### No. 1884.

ARGUED NOVEMBER 7, 1929.                DECIDED DECEMBER 5, 1929.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is a condemnation proceeding brought by the City and County of Honolulu for the purpose of acquiring for use as a public highway two certain parcels of land, designated as Lots 19 and 21, owned by Mrs. Victoria Ward, each of which parcels constitutes only a part of a larger tract of land, which latter is not sought to be condemned.

The jury before which the case was tried returned a verdict assessing the damages and allowing the compensation to which it believed from the evidence the defendant was entitled. Judgment of condemnation was thereupon entered and it was also ordered that the plaintiff pay to the defendant the amounts determined by the verdict. There is no denial of the plaintiff's right to acquire the land by condemnation. The defendant claims, however, that during the progress of the trial certain errors were committed by the court which affected, to her detriment, the damages to which she was entitled and she has therefore brought the case here for review on writ of error.

The first assignment of error relates to the admission in evidence, against defendant's objection, of two blueprints of a portion of an original map that was in the official custody of the engineering department of the City and County of Honolulu. These blueprints showed the location of the contemplated highway and the location of the defendant's property sought to be condemned. The ground of the objection was that the blueprints were mere copies of the general map and were therefore inadmissible as evidence. In view of what transpired later we deem it unnecessary to decide whether the objection was well taken. Subsequent to the admission of these blueprints the plaintiff introduced as a witness J. H. Fisher, regis-

trar of the land court. Mr. Fisher produced, at plaintiff's request, a blueprint taken from the files of his office (which he testified was an official map), upon which were delineated the contemplated highway and the portions of defendant's property through which it projected. This blueprint was received in evidence with the express consent of defendant's counsel. There was no substantial difference, so far as the defendant's property which was involved in the suit was concerned, between the blueprints that were objected to and the one which the defendant consented to. Under these circumstances, even if there was technical error in admitting in evidence the blueprints first offered, it was cured.

The next assignments of error we will consider relate to the testimony of F. E. Steere and A. D. Castro, plaintiff's witnesses. Each of these witnesses was permitted, against the defendant's objection, to testify that in his opinion no damage would be done to the remaining parcels of land because of the segregation from them of Lots 19 and 21, which were sought to be condemned. The ground of the objection was that it had not been shown that either of these witnesses was qualified to give an expert opinion on this question. Under the evidence the objection was, we think, properly overruled. Mr. Castro testified that he was president and manager of the Union Trust Company; that he had passed on the values of real estate for over twenty years in the City and County of Honolulu; that he was appraiser of the Mutual Building & Loan Society for over eleven years; was a member of the land board for over ten years and had been president of the trust company for over six years. He also testified that he was familiar with the defendant's property sought to be condemned and with the property from which it would be segregated. Mr. Steere testified that he was the manager of the real estate department of the Waterhouse

Trust Company, which position he had held for about twenty-five years; that he had been in the real estate business for that length of time; that he was a member of the Honolulu realty board and a member of the appraisal committee of that board; that he had been on the defendant's land involved in the condemnation proceedings and was familiar with it. Both witnesses testified that they had served in conjunction with W. L. Morgan on a board appointed by the City and County of Honolulu for the purpose of examining and appraising the land in question and had finished the work and made their report. We think under their testimony that it was entirely proper for the trial court to permit these witnesses to express their opinion on the effect upon the larger portions of land of the segregation from them of the smaller portions.

The next assignments of error which we will consider relate to the refusal of the trial court to permit the defendant to introduce evidence as to the cost of filling certain portions of her land, from which the lots sought to be condemned were to be segregated, in order to elevate such portions to the level of the proposed highway. The uncontradicted evidence showed that the highway, when completed, would leave a portion of the defendant's land abutting on it, and from which her property sought to be condemned would be segregated, below the surface of the highway and in order to raise it to the level of the highway it would be necessary to fill it. While it is conceded by the defendant that the cost of the fill would not constitute a separate and independent element of damages it is claimed that it was relevant to the question of whether the land to be filled would be depreciated in value because of its segregation from the portion sought to be condemned for the highway and also to the question of whether it would be depreciated in value because of the character of the highway.

188

It cannot be doubted that circumstances may exist under which the kind of evidence sought to be introduced would be relevant. Other circumstances are conceivable under which it is equally clear that it would not be relevant. In order, therefore, to determine the question presented it is necessary to consider the present physical aspects of the defendant's property through which the proposed highway will pass and the relation of this property to existing abutting streets. This property is bounded on the west by Ward Avenue and on the south by Waimanu Street. Both of these highways are built at a grade of some five feet above sea level and all of the defendant's land contiguous to them is at the same elevation as the highways themselves. The highway which the plaintiff now contemplates building, and for which a portion of the defendant's land was condemned, is the continuation of what is known as Kapiolani Boulevard. The continuation of the boulevard, at the point where it enters defendant's property, bisects Ward Avenue at approximately right angles and emerges from the property at its easterly boundary. Its entire course through this property is parallel with Waimanu Street and at right angles to Ward Avenue. Its proposed grade is the same as that of Ward Avenue and Waimanu Street and is the same grade as a portion of the defendant's property through which it will pass. It is apparent, therefore, that this portion of her property will be flush with the surface of the boulevard and will require no filling to make it easily accessible thereto. There is, however, a depressed portion of her land which lies easterly of Ward Avenue and northerly of Waimanu Street which is below the level of these two highways and below the level of the other portions of her land which are contiguous to it on the west and on the south. It will be necessary, therefore, for the plaintiff, if the boulevard is to be built at a uniform grade,

to fill the condemned strip which extends over the depression to a sufficient width to provide for the lateral boundaries of the boulevard. This will, of course, leave the remaining portions of the depression below the surface of the boulevard and it is obvious that if they are to be placed on a level with the boulevard they will have to be filled.

It is equally obvious that if the boulevard had never been thought of this low lying land, in order to make it level with and more accessible to Ward Avenue and Waimanu Street, would have to be filled. The only effect of the boulevard will be to lessen the area of the defendant's unfilled land and to make it easier for her to accommodate it to adjacent highways. This is manifest because the plaintiff must at its own expense fill enough of it to provide for the width of the boulevard. It is apparent, therefore, that the boulevard will not injuriously affect the relative position of the depressed land to neighboring highways or to the remainder of the defendant's property. It is also equally apparent that it will not change the physical aspects of the land or affect the uses to which it is now suited. As we have already indicated, it is below the level of the land surrounding it and it is also wet and marshy in character and has on it a fish pond. In its present condition it is used by the owner for pasturage and fishing only. It will be in the same condition and as suitable for its present purposes after the boulevard is built as it now is. Under all these circumstances we think the plaintiff is under no obligation to change its condition by raising it to a higher level. The evidence offered, of the cost of filling it, under the guise of showing depreciation in its market value, would have been, if received, confusing and misleading and was properly rejected.

In *Mead* v. *Pittsburg*, 194 Pa. 392, 395, 396, the court said: "It will be perceived that the present case is not an

instance where, by a change in the grade of the street, the property is left in a condition different from what it was before the change of grade was made. In that kind of a case the change of grade has inflicted a special change in the condition of the property as it was, for which the party is entitled to be compensated, because a restoration to the original condition as nearly as may be is a subject of necessary expenditure which may be properly shown, not as a basis of specific recovery, but as affecting the value before and after the injury. But here the whole lot of the plaintiff having already been below the level of the adjoining streets, the plaintiff is not entitled to have his entire property lifted up to the level of the street as it is made by raising the grade. There is simply an increase in the elevation of the grade, and the fact of such additional elevation, as affecting the value of the property after the change, may be shown, but not the specific cost of changing the whole surface of the property by lifting it all up to the new grade. The surface never was at such an elevation, and there is no obligation to put it there, but if the fact of the additional elevation of the grade is an injury to the market value of the property, the extent of that injury may be shown, and that is the difference in market value before and after. In *Patton* v. *Phila.*, 175 Pa. 88, the natural condition of the property with reference to the street was changed. The grade was elevated, and this created a depression of the land below the grade which had never before existed. This was an element of damage in the determination of which we held that it was competent to prove the cost of establishing a new connection with the street, as something to be considered in determining the change of value. In such a case we held this proof should be received for the proper information of the jury. In the case now under consideration it will be seen at once that to admit the evidence offered" (which

related to the cost of the fill) "would involve a most intricate and complicated condition of things which would not be essential to the determination of the main question, to wit: the difference in value of the property before and after the change of grade, and would necessarily tend to confuse and mislead the jury. It would be entirely competent for any well informed and intelligent witness to form an opinion as to whether the property would be worth as a whole more or less after the change than before, but to go into proof of an expenditure necessary to put the property in a shape and condition in which it never was before, and then to eliminate what proportion of this expenditure should be assigned to the part of the property bordering on Wightman street was something even the experienced engineer of the plaintiff said he could not do. The damages to be recovered under such a line of proof would be entirely too uncertain, remote and speculative to be safely relied on in a jury trial." See also *Bond* v. *Philadelphia,* 218 Pa. 475; *Edsall* v. *Jersey Shore Borough,* 220 Pa. 591.

The next assignments of error we will consider relate to the verdict of the jury. The first of these assignments relates specifically to the supposed failure of the jury to take into consideration the cost of a culvert or pipes necessary to be built, after the construction of the proposed boulevard, in order to drain that portion of the defendant's land which is depressed and which is adjacent to Lot 21. This cost was shown by the evidence to be $988. It is conceded by counsel for defendant that the cost of such drainage was not recoverable as special damages. It is contended, however, that it should have been considered by the jury in determining whether the remaining portion of the land adjacent to Lot 21 was depreciated in value because of its severance from Lot 21 and that it should also have been considered by the jury in determining whether

such remaining portion was depreciated in value because of the character of the proposed boulevard. The jury found by its verdict that no damages would be caused to the remaining portion of the defendant's land by the severance therefrom of Lot 21. In reaching this conclusion the jury is conclusively presumed to have considered all the evidence bearing on this subject, including that relating to drainage. As we shall presently see, the jury made no finding as to whether the remaining land from which Lot 21 was severed would be damaged because of the character of the proposed boulevard. For reasons that will appear later we think the defendant is precluded from complaining that evidence bearing on this phase of the case was not considered.

The next attack made on the verdict is that it contains no finding of the jury as to whether the remaining property adjoining Lot 21 would be depreciated in value because of the construction of the boulevard. It is true the verdict is silent on this subject. Section 821, R. L. 1925, contains the following provision: "In fixing the compensation or damages to be paid for the condemnation of any property, the value of the property sought to be condemned and all improvements thereon, shall be separately assessed; and if the property sought to be condemned constitutes only a portion of a larger tract, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff shall also be assessed; and also how much the portion not sought to be condemned will be benefited, if at all, by the construction of the improvement proposed by the plaintiff; and if the benefit shall be equal to the amount of compensation assessed for the property taken, and for damages by reason of its severance from another portion of the same

tract, then the owner shall be allowed no compensation, but if the benefits shall be less than the amount so assessed as damages or compensation, then the former shall be deducted from the latter and the remainder shall be the amount awarded as such compensation or damages."

It will be observed that one of the requirements of the statute is that "if the property sought to be condemned constitutes only a portion of a larger tract, the damages which will accrue to the portion not sought to be condemned by reason of * * * the construction of the improvements in the manner proposed by the plaintiff shall also be assessed." The transcript shows that after the court had read its instructions to the jury the following occurred: "The Court: Gentlemen of the jury, you will remain in this room, select from among your number a foreman and deliberate on your verdict, and we will leave with you the petition and the exhibits and the instructions. You will, by the foreman, sign the verdict as given here, certain places being left blank, and the verdict is as follows: 'We, the jury in the above entitled cause, find the following verdict: One, that the fair market value on March 19th, 1928, of the 15,560 square feet of land designated in this proceeding as Parcel 19 was in the sum of .............................; two, that the fair market value on March 19, 1928, of the 82,118 square feet of land designated in this proceeding as Parcel 21, was in the sum of...................; three, we further award to the defendant as damages to the remaining portion of defendant's land, not in this proceeding sought to be condemned, caused by the severance of Parcel 19 therefrom, and by the manner of construction of the proposed improvement, the sum of...................... dollars, in addition to amount in paragraph 5-C; four, we further award to the defendant as damages to the remaining portion of defendant's land, not in this proceeding sought to be condemned, caused by the severance of Parcel

21 therefrom, the sum of...................dollars in addition to the amount in paragraph 5-C; five, we further award to the defendant as compensation for the following named improvements and damages, the following sums of money, respectively: Improvements, (a) moving house, $100, (b) fences upon property taken, $184, other improvements ...................:..............., to be filled in; damages (c) replacement of fences adjacent to Parcel 19 and Parcel 21, $1508.' Mr. O'Brien: We respectfully except to your Honor's giving of plaintiff's instructions No. 1, 7 and 11."

It will be observed that the jury was instructed by the form of verdict given it to award damages for all the items mentioned in section 821, except as to the damage that was caused to Lot 21 by the manner of construction of the proposed improvement. As to this lot there was no mention of this element of damages. The form of verdict was not excepted to by either party and therefore was presumably consented to. The jury, after filling in the blank spaces, returned its verdict in the exact form in which it was given. When the verdict was received and read the defendant's counsel excepted to it as follows: "We except to the verdict, your Honor, on the ground that it is contrary to the law, contrary to the evidence, and contrary to the weight of the evidence, and give notice of motion for new trial."

It appears from the foregoing that the defendant through her counsel kept silent when the court instructed the jury as to its form of verdict, from which was omitted the element of damages which she now claims should have been incorporated in it. It also appears that when the verdict was returned and read she again failed to call the court's attention to this omission. We think under these circumstances that in all fairness to the trial court and to the opposing party this claim of error should not be recognized. The omission complained of was no doubt a mere

inadvertence which would at once have been cured if the court's attention had been called to it. It was the defendant's duty to do this and not having done it she has foreclosed herself from now complaining. To hold otherwise would be a manifest travesty on justice.

There is another reason, statutory in its nature, why the point under discussion cannot be considered. Section 2524, R. L. 1925, provides among other things that "no error going to the  *  *  *  giving of or refusing to give an instruction to the jury shall be considered by the supreme court unless the same was made the subject of an exception noted at the time the alleged error was committed." Instructing the jury as to its form of verdict, we think, is just as much an "instruction," as that term is used in the statute, as any other instruction that is given or refused, and the failure of a party to seasonably except to it precludes us from considering an assignment of error that is predicated upon it.

The next attack that is made on the verdict is that it does not determine whether the portion of the defendant's land not sought to be condemned will be benefited by the improvement. This question also was entirely omitted from the form of verdict given the jury and was likewise omitted from the verdict that was returned. The point raised by the defendant in this connection is governed by the same rule as that which governs the immediately preceding point. In addition to this we think the failure of the court to instruct the jury on the question of benefits and the failure of the jury to make any finding on that subject is to the defendant's advantage and that she therefore has no ground of complaint on this score. If the jury had found that she was benefited her benefits would have been deducted from her damages and the amount of her recovery would, to that extent, have been lessened.

The remaining assignments of error, likewise, have received our careful consideration and are found to be without merit.

The judgment is affirmed.

*A. Lewis, Jr.* (*Peters & O'Brien* and *A. Lewis, Jr.,* on the briefs), for plaintiff in error.

*L. P. Scott,* Deputy City and County Attorney (*J. F. Gilliland,* City and County Attorney, with him on the brief), for defendant in error.