979 P.2d 1107

**HOUSING FINANCE AND DEVELOP-MENT CORPORATION, a public body and body corporate and politic, Plaintiff–Appellee,**

**and**

**Harold K.L. Castle Foundation, a Hawai'i non-profit corporation; John Castle Baldwin, also known as John C. Baldwin, James Castle McIntosh, also known as James C. McIntosh, Hawaiian Trust Company Limited, a Hawai'i corporation, as Trustees of the Trust created by the unrecorded Trust Agreement dated August 5, 1974, made by Alice Hedemann Castle, as Settlor,**

**and**

**James C. Castle, as Individual Trustee, as amended, Defendant Trustees–Appellees,**

**v.**

**Dale Baker FERGUSON, Defendant Lessee–Appellant,**

**and**

**Charles Matthews White, Eloise F. Wickersham and First Hawaiian Bank, a Hawai'i corporation, Successor Trustees of the trust created by the unrecorded Declaration of Revocable Living Trust September 11, 1970, as amended, made by**

82

Horace Winfred Beek White, as Settlor and Trustee; Hawaiian Trust Company, Limited, a Hawaiʻi corporation, Ancillary Personal Representative of Lewis Winn Stunston, Jr., deceased; W. Lawrence Clapp, Ancillary Personal Representative of Marguerite T. Peck, also known as Marguerite Reid Peck, Marguerite Trousdale, Marguerite Reid Trousdale, Marguerite Trousdale Peck and Marguerite Peck, having been so appointed by the Circuit Court of the First Circuit, State of Hawaiʻi, through Probate No. 42920; W. Lawrence Clapp, Successor Trustee of the trust created by the Trust Agreement dated June 30, 1965, made by and between Paul Whitney Trousdale, as Settlor, and Horace Winfred Beek White, as Trustee, filed in the Office of the Assistant Registrar of the Land Court of Hawaiʻi as Document No. 370145 and recorded in the Bureau of Conveyances of the State of Hawaiʻi in Liber 5135, page 522, as supplemented; W. Lawrence Clapp, Successor Trustee of the trust created by the Trust Agreement dated June 30, 1965, made by and between Paul Whitney Trousdale, as Settlor, and Horace Winfred Beek White, as Trustee, filed in said Office as Document No. 378726 and recorded in said Bureau in Liber 5135, page 538, as supplemented; W. Lawrence Clapp, Ancillary Personal Representatives of John Dabney Murchison, deceased, having been so appointed by the Circuit Court of the First Circuit, State of Hawaiʻi through Probate No. 40353; Willis Lawrence Clapp, authorized agent and attorney-in-fact for the Estate of Clinton Williams Murchison, Jr., under the supervision of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, in Case No. 385–30266–A–11; Norma Elizabeth Burner; Ray Franklin Burner; Rose Lorraine Ferguson; Joseph S.K. Keane; Miriam M.K. Keane; Samson P. Low; Veronica L. Low; Janet Sachiko Tanahara; Russell Tamio Tanahara; Blossom Daisy Tong; Vernon Randolph Wahilani Tong; Barnaby S.K. You; Roberta M.H. You (Herbert M.D. You and Diana M.Y. You, Sellers under Agreement of Sale); John Does 1–200; Mary Does 1–200; Doe Partnerships 1–50; Doe Corporations 1–50; Doe "Non–profit" Corporations 1–50; and Doe Entities 1–50, Defendants.

No. 21120.

Supreme Court of Hawaiʻi.

July 8, 1999.

Anthony P. Locricchio, on the briefs, Kailua, for defendant-appellant.

Sonia Faust, John C. Wong and Carolee M. Aoki, Deputy Attorneys General, on the briefs, for plaintiff-appellee Housing Finance and Development Corporation.

Carol A. Eblen and Teresa R. Favilla of Goodsill Anderson Quinn & Stifel, on the briefs, Honolulu, for defendants-appellees Castle Trustees.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by NAKAYAMA, J.

Defendant-appellant Dale Ferguson (Ferguson) appeals from a judgment in a Hawai'i Revised Statutes (HRS) chapter 516 leasehold condemnation proceeding involving Ferguson, plaintiff Housing Finance and Development Corporation, State of Hawai'i (HFDC or the State), and defendant-appellees Harold K.L. Castle Foundation, James Castle Baldwin, James Castle McIntosh, and Hawaiian Trust Company, Ltd. (collectively, Castle). On appeal, Ferguson argues that the trial court erred by: 1) determining blight of summons damages itself instead of leaving the issue to the jury; 2) disallowing Ferguson's rebuttal witness; and 3) failing to limit the State's presence in the trial to opening and closing statements.[1] Because

---

1. Ferguson also argues that this court should recuse itself from hearing this appeal. As we

Ferguson's arguments lack merit, we affirm the judgment of the circuit court.

## I. BACKGROUND

In 1992, a group of homeowners (lessees), Ferguson among them, initiated procedures pursuant to HRS chapter 516 to condemn the leased fee interest in their house lots, owned by Castle, in the Pikoiloa subdivision in Kailua, Hawai'i. On October 12, 1994, HFDC brought the condemnation action in court. The trial began on March 17, 1997, Judge Dan Kochi presiding. On March 18, lessees brought several motions in limine, including motions to: prevent Castle from asserting that the lessees must present their case first with or without rebuttal; limit the state's presence in the trial to opening and closing statements; and strike the testimony of one of Castle's expert witnesses. The trial judge denied all of the motions stated above.

On March 24, 1997, the lessees filed a motion for "disqualification of Judge [Kochi] and/or in the alternative for partial recusal ... on any factual determinations of value or blight of summons rates." On March 27, Judge Kochi denied the lessees' motion, but declared a mistrial before opening statements, based on his belief that the lessees might "feel that they did not have a fair trial in this case." Judge Marie Milks was assigned as the new trial judge.

On July 14, 1997 Castle filed several motions in limine before Judge Milks, including a motion to exclude evidence of blight of summons damages from presentation to the jury. In its motion, Castle argued that evidence of blight of summons damages was irrelevant to the jury's determination of fair market value. HFDC filed a statement of no position, and the lessees opposed. After hearing oral argument, Judge Milks granted the motion on August 6, 1997.

The trial was conducted before a jury from July 17 to August 7, 1997. On August 7, the jury returned a special verdict on the fair market value of each condemned lot. On September 11, 1997, all the lessees remaining at the end of the trial, except Ferguson,

agreed to Castle's settlement offer of 8% blight of summons damages. On September 11, Judge Milks conducted a hearing to determine blight of summons damages for Ferguson. On September 23, the trial court issued findings of fact and conclusions of law setting blight of summons damages at 9.25% for Ferguson. The trial court entered final judgment on October 8, 1997. Ferguson timely appealed.

## II. DISCUSSION

### A. Ferguson's Noncompliance with the Hawai'i Rules of Appellate Procedure

■ Before discussing the issues raised by Ferguson, we initially note the deficiencies of his opening brief. Ferguson filed the brief on April 16, 1998, nearly three months after the initial filing deadline of January 26, 1998. Despite the additional time granted, the opening brief falls woefully short of the requirements of Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b). Ferguson's noncompliance includes: 1) failure to provide a table of authorities, in violation of Rule 28(b)(1) (Ferguson's brief in fact contains no legal authority except for general references to HRS chapter 516); 2) submission of a one-sentence "statement of the case," in violation of Rule 28(b)(3); 3) failure to refer to the specific error alleged and point out in the record where the alleged error occurred and where it was objected to, in violation of Rule 28(b)(4); and 4) attachment of self-typed "transcripts" to his brief, which are not part of the record on appeal, in violation of Rule 28(b)(9).

Ferguson's failure to conform his brief to the requirements of HRAP Rule 28(b) burdens both the parties compelled to respond to the brief and the appellate court attempting to render an informed judgment. As we have previously stated, such noncompliance offers sufficient grounds for the dismissal of the appeal. *See Bettencourt v. Bettencourt,* 80 Hawai'i 225, 228, 909 P.2d 553, 556 (1995). Nonetheless, inasmuch as "this court has consistently adhered to the policy of afford-

have already rejected this argument in our denial of Ferguson's March 20, 1998 motion for the

recusal of the supreme court, we do not address it again in this opinion.

ing litigants the opportunity to have their cases heard on the merits, where possible," *id.* at 230, 909 P.2d at 558 (citation and internal quotations omitted), we address the issues Ferguson raises on the merits.

### B. The Trial Court's Determination of Blight of Summons Damages and Exclusion of the Issue from the Jury

■ "Blight of summons damages" compensates a landowner in a condemnation action "for the damages resulting from the government's delay in paying the full cash equivalent of the property taken on the day of summons." *Housing Fin. and Dev. Corp. v. Takabuki,* 82 Hawai'i 172, 176 n. 5, 921 P.2d 92, 96 n. 5 (1996) (citation omitted).[2] Such damages take the form of "interest at a reasonable rate on the money representing the value of the property from [the date of summons] until paid." *Hawaii Hous. Auth. v. Midkiff,* 69 Haw. 247, 249, 739 P.2d 248, 249 (1987) (citation omitted). We have long recognized blight of summons damages as an essential component of the "just compensation" required by the fifth amendment to the United States Constitution[3] and article I, section 20 of the Hawai'i Constitution.[4] *See Midkiff,* 69 Haw. at 249, 739 P.2d at 249 ("The award of such damages places the condemnee "in as good a position pecuniarily as he would have been had his property not been taken. Nothing short of that constitutes 'just' compensation." (Citing *Honolulu v. Lord,* 36 Haw. 348, 1943 WL 6367 (1943))).

Ferguson raises various objections to the trial court's determination of blight of summons damages. We discern three distinct issues in Ferguson's arguments: 1) whether the trial court erred by refusing to submit the issue of blight of summons damages to the jury, *i.e.,* whether blight of summons damages are triable by jury as of right; 2) whether the trial court erred by excluding any evidence of blight of summons damages from the jury; and 3) whether the trial court erred in its determination of blight of summons damages.

### 1. The right to jury trial on blight of summons damages, in particular, and in eminent domain actions, generally

■ We first determine whether Ferguson had a right to a jury trial on blight of summons damages. The question is a legal one, reviewed under the right/wrong standard. *See Mendes v. Hawai'i Ins. Guar. Ass'n,* 87 Hawai'i 14, 17, 950 P.2d 1214, 1217 (1998).

In determining the right to jury trial on the specific issue of blight of summons damages, we inevitably confront the question of whether a right to jury trial exists in eminent domain proceedings in the first instance. This latter question, one of first impression in this jurisdiction,[5] "necessarily rests upon the interpretation of state law because the federal right to a jury trial in civil cases, secured by the seventh amendment to the United States Constitution, does not apply to the states." *Richardson v. Sport Shinko*

---

2. The term "blight of summons damages," unique to Hawai'i, apparently stems from our past observation that:

> What is *commonly called interest* is in fact an additional award of damages for injury caused to the owner by the *"blight of the summons"* ... so that the owner may have that "just compensation" granted to him by the fifth amendment to the Federal Constitution.

*Territory v. Honolulu Plantation Co.,* 34 Haw. 859, 872 (1939) (emphasis added). Other states have referred to the compensation for delay in payment in condemnation proceedings by various other terms, including "interest," *see, e.g., State ex rel. Dep't of Transp. v. Barsy,* 113 Nev. 712, 941 P.2d 971 (1997), "pre-judgment and post-judgment interest," *see e.g., Carter v. City of Oklahoma City,* 862 P.2d 77 (Okl.1993), "detention damages," *see Walker v. Acting Director,*

*Dep't of Forests and Parks,* 284 Md. 357, 396 A.2d 262 (1979), and "delay compensation," *see* Pa. Cons.Stat. Ann. § 1–611 (West 1997).

3. The fifth amendment states in relevant part: "[N]or shall private property be taken for public use, without just compensation."

4. Article I, section 20 of the Hawai'i Constitution states: "Private property shall not be taken or damaged for public use without just compensation."

5. This court requested supplemental briefing on this issue due to its novelty, and because the parties did not address it in their initial written submissions. We also permitted the City and County of Honolulu (the City) to file an amicus brief on the issue.

*(Waikiki Corp.)*, 76 Hawai'i 494, 512–13, 880 P.2d 169, 187–88 (1994) (citations omitted).

Article I, section 13 of the Hawai'i Constitution, as amended in 1978, provides that: "In suits at common law where the value in controversy shall exceed five thousand dollars, the right of trial by jury shall be preserved." The statutes and rules offer little guidance beyond this broad constitutional mandate. HRS chapter 516 does not expressly require a jury trial for leasehold condemnation actions.[6] The basic statute on eminent domain provides that: "Except as otherwise expressly provided in this part, the procedure [in condemnation actions] shall be the *same as in other civil actions.*" HRS § 101–11 (1993) (emphasis added). HRS § 635–13 (1993) states: "When the right of trial by jury is *given by the Constitution or a statute* of the United States or this State and the right has not been waived, the case shall be tried with a jury." (Emphasis added.) Hawai'i Rules of Civil Procedure (HRCP) Rule 38(a) also provides: "The right to trial by jury as *given by the Constitution or a statute* of the State or the United States shall be preserved to the parties inviolate." (Emphasis added.)

 Further refined, the question becomes whether article I, section 13 of the Hawai'i Constitution provides a right to jury trial in eminent domain proceedings. Because article I, section 13 was patterned after the seventh amendment to the United States Constitution,[7] "we have ... deemed the interpretation of [the seventh amendment] by the federal courts highly persuasive in construing the right to a civil jury trial in Hawai'i." *Richardson*, 76 Hawai'i at 513, 880 P.2d at 188 (citing *Harada v. Burns*, 50 Haw. 528, 532 & n. 1, 445 P.2d 376, 380 & n. 1 (1968)). The seventh amendment preserves the right of trial by jury that "existed under the English common law when the Amendment was adopted [in 1791]." *Markman v. Westview Instruments*, 517 U.S. 370, 376, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (quoting *Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657, 55 S.Ct. 890, 79 L.Ed. 1636 (1935)) (brackets added). Similarly, article I, section 13 preserves the jury right that existed under the common law of this state at the time that the Hawai'i Constitution went into effect in 1959. *See, e.g., Department of Agric. & Consumer Serv. v. Bonanno*, 568 So.2d 24, 28 (Fla.1990) ("[T]he proper inquiry to be made ... [i]s whether under English and American practice at the time Florida's constitution became effective in 1845, there existed a right to a jury trial in a given type of proceeding."); *Chamberlin v. Detroit Edison Co.*, 14 Mich.App. 565, 165 N.W.2d 845, 849 (1968) ("The right of jury trial constitutionally protected ... is the right to a trial by jury as it had become known to the previous jurisprudence of the state.").

In light of the constitutional mandate "preserving" the right to jury trial in "suits at common law," the United States Supreme Court has developed the following two-part "historical analysis:"

> We ask, first, whether we are dealing with a cause of action that either was tried *at law* at the time of the [adoption of the constitution] or is at least analogous to one that was," *see, e.g., Tull v. United States*, 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987). If the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to *preserve* the substance of the common-law right as it existed [when the constitution was adopted].

*Markman*, 517 U.S. at 376, 116 S.Ct. 1384 (emphasis and brackets added).

---

**6.** HRS § 516–56 (1993) reads:

> **Eminent domain trial.** The parties to the eminent domain action brought under this chapter shall be corporation as plaintiff and the lessees and all other necessary parties as defendants. The corporation does not have the burden of proof in establishing the fair market value of the leased fee interest being acquired. Instead, all parties, including the corporation, shall be given an opportunity to present evidence of fair market value of the leased fee interest being acquired.
>
> We further note that chapter 38 of the Revised Ordinances of Honolulu 1990, relating to residential condominium leasehold condemnation, also contains no jury trial requirement.

**7.** The seventh amendment states in relevant part: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]"

■ Regarding the first issue, this court has applied, in the case of statutory actions without direct common-law antecedents, a simplified test focusing solely on whether the nature of the remedy sought is "legal" or "equitable." *See Mehau v. Reed,* 76 Hawai'i 101, 110–11, 869 P.2d 1320, 1329–30 (1994).[8] The action presently in question, however, eminent domain, traces its origins directly back to the English common law.[9] *See generally* 1 J. Sackman, *Nichols on Eminent Domain* §§ 1.2–1.24 (rev.3d ed.1998) (explaining the history of the eminent domain power) [hereinafter *Nichols*]. Under settled federal court jurisprudence, condemnation proceedings constitute "suits at common law" within the meaning of the seventh amendment. *See Kohl v. United States,* 91 U.S. 367, 376, 23 L.Ed. 449 (1876) ("The right of eminent domain always was a right at common law."); *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) ("[A]n eminent domain proceeding is deemed for certain purposes of legal classification a 'suit at common law.' ").[10] We adopt the view of the federal courts for purposes of article I, section 13.

■ In this case, however, resolution of the first issue does not immediately allow us to reach the second. As HFDC, Castle, and the City point out, the practice in England and the colonies prior to the adoption of the United States Constitution did not include jury trials as of right in eminent domain proceedings. *See United States v. Reynolds,* 397 U.S. 14, 18, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970) (quoting 5 J. Moore, *Federal Practice* ¶ 38.32[1], p. 239 (2d ed.1969)).[11] Consequently, under federal law, "it has long been settled that there is no constitutional right to a jury in eminent domain proceedings." *Id.;* see also *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, ——–——, 119 S.Ct. 1624, 1651–54, 143 L.Ed.2d 882 (1999) (Souter, J., dissenting) (summarizing the wealth of authority on the subject). Likewise, courts in other states with analogous constitutional provisions "preserving" or rendering "inviolate" the jury right have uniformly declined to recognize a constitutional jury right in state eminent domain proceedings. *See Nichols* § 4.105[3], at 4–123 n. 21 (compiling the state court decisions).

Our inquiry, however, does not end here, for in interpreting article I, section 13, we must refer to the particular common-law practice in this jurisdiction in 1959, the effective date of the provision. Early laws of the Hawaiian Kingdom authorizing the condemnation of property for purposes such as highways, water works, and railways, consistent with English and early-American common-law practice, *see supra* note 11, did not require the assessment of damages by a

---

8. The United States Supreme Court examines, in addition to the nature of the remedy sought, the nature of the action, comparing it to eighteenth century actions at common law. *See Wooddell v. International Bhd. of Elec. Workers, Local 71,* 502 U.S. 93, 97, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991). *But see Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 574–581, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (Brennan, J., concurring) (criticizing the "nature of the action" inquiry as "impracticable and unilluminating" and urging its abandonment).

9. We note that this case involves, even more specifically, an eminent domain action for leasehold conversion under HRS chapter 516, a relatively recent statutory invention. *See generally Takabuki,* 82 Hawai'i at 174, 921 P.2d at 94 (describing the history and intent of the Hawai'i Land Reform Act). Nevertheless, HRS chapter 516 actions qualifies as an action in eminent domain for purposes of our analysis.

10. Some legal commentators disagree. *See, e.g.,* 1A *Nichols* § 4.105[1], at 4–116 ("Condemnation proceedings are not suits at common law[.]").

11. As explained in *Nichols:*
 The jury which was required in the ancient proceeding ... by which highways were laid out in England at the time of the settlement of the American colonies, and which determined what damages would be suffered ... was not the common[-]law jury of twelve presided over by a judge. It was a jury of indeterminate number, twelve, or less, or more, and was presided by a sheriff or a coroner.... In accord with this practice, it was the custom .... in almost all of the original thirteen states at the time when their constitutions were adopted, to refer the question of damages ... [in eminent domain cases] to a commission of viewers or appraisers, generally three or five in number.
 *Id.* § 4.105[1], at 4–115 (footnote omitted) (ellipses and brackets added).

common-law jury of twelve.[12] The first consolidated law of eminent domain, the predecessor of HRS chapter 101, merely provided, as HRS § 101–11 does today, that: "Where not expressly provided in this chapter, the procedure shall be the same in other civil actions." Revised Laws of Hawai'i § 497 (1905). At the time of the enactment of the eminent domain law in 1896, however, the predecessor of HRS § 635–13 mandated that: "Issues of fact arising in any [civil suit seeking liquidated or unliquidated damages] shall be tried by jury, unless jury trial be waived by the parties with the consent of the court." *See* Civil Code of the Hawaiian Islands § 1130 (1859). This jury trial provision continued in force without material change until it assumed its present form via amendment in 1972. *See* 1972 Haw. Sess. L. Act 89, § 2B(c) at 344.

As discussed above, the statutes presently do not provide a jury right in eminent domain proceedings. We mention the previous versions of HRS § 101–11 and HRS § 635–13, however, insofar as they apparently initiated a practice of requiring jury trials upon demand in eminent domain proceedings. *Cf. United States v. Honolulu Plantation*, 122 F. 581, 587–88 (9th Cir.1903) (noting that the Hawaiian statutes require a jury trial in eminent domain proceedings). This practice has continued unquestioned until today.[13] More

relevant to the present discussion, it had become firmly entrenched by 1959.[14]

 Based on the established common-law convention of this jurisdiction at the time of the adoption of the state constitution, we hold that, as a general matter, a right to jury trial exists in state eminent domain proceedings. In so ruling, we note the statutory origins of the practice and the absence of a prior decision by this court directly confirming such a right. These points, however, are not critical to our constitutional analysis. *Cf.* P. Blair, *Federal Condemnation Proceedings and the Seventh Amendment*, 41 Harv. L.Rev. 29, 32–36 (1927) (discussing how eminent domain actions in England originated from acts of Parliament). Federal seventh amendment precedent considers the practice as significant in itself, regardless of its specific source. *See e.g., Reynolds, supra; Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S.Ct. 1279, 1285–86, 140 L.Ed.2d 438 (1998) (discussing historical copyright practice, much of which derived from statutes). "The common law," after all, is not limited to published judicial precedent, but includes the entire wealth of received tradition and usage, "fundamental principles, modes of reasoning, and the substance of its rules as illustrated by the reasons on which they are based, rather than the mere words

---

12. *See, e.g.,* Act of August 18, 1860, § 2, *reprinted in* Compiled Laws of the Hawaiian Kingdom at 501 (1884) [hereinafter Cp. L.] (requiring appointment of three disinterested commissioners to assess the value of property condemned for the Honolulu Water Works); Act of August 8, 1878, § 14, Cp. L. at 624 (allowing condemnor for railway purposes to submit a dispute over damages to an arbitrator); Cp. L. § 186 (allowing the government to appoint, at its discretion, a commission of three or a jury to assess the value of property condemned for a road).

13. HFDC avers that "[a]ll land reform cases have been jury trials because such were specifically requested by the State[.]" The City states that "the circuit court has always afforded a jury trial on the issue of the fair market value of the real property being condemned unless the parties in the case agree to waive the jury." Countless published decisions of this court indicate that, absent waiver, juries have regularly determined fair market value in eminent domain proceedings and that this court, at least implicitly, has recognized this practice.

14. A non-exhaustive survey of the case law prior to the effective date of article I, section 13 has produced the following cases documenting trials either by jury or "jury-waived:" *City and County of Honolulu v. Caetano*, 30 Haw. 1 (1927) (jury-waived); *City and County of Honolulu v. Ward*, 31 Haw. 184 (1929) (jury trial); *In re Ward*, 31 Haw. 781 (1931); *City and County of Honolulu v. Board of Water Supply, City and County of Honolulu*, 36 Haw. 348 (1943) (jury trial); *City and County of Honolulu v. Tam See*, 38 Haw. 592, 600 (1950) (jury-waived); *Territory v. Ala Moana Gardens, Ltd.*, 39 Haw. 514 (1952) (jury trial); *City and County of Honolulu v. Barros*, 40 Haw. 615 (1954) (jury-waived); *Territory v. McGillivray*, 41 Haw. 191 (1955) (jury-waived); *Territory v. Bishop Trust Co.*, 41 Haw. 358 (1956) (jury trial); *City and County of Honolulu v. Collins*, 42 Haw. 199 (1957) (jury-waived); *Hawaii Hous. Auth. v. Rodrigues*, 43 Haw. 195 (1959) (jury-waived). *See also Akana v. Damon*, 42 Haw. 547 (1958) (holding that tenants were not entitled to have the value of their improvements determined by the same jury that determines the compensation due the holders of the fee-simple interest).

in which they are expressed." *Territory v. Alford*, 39 Haw. 460, 466 (1952) (quoting *Dole v. Gear*, 14 Haw. 554, 561 (1903)). *See* 1 W. Blackstone, Commentaries *68 ("For the authority of [the common law] rests entirely upon general reception and usage ... that it hath been always the custom to observe it."); HRS § 1–1 (1993) ("The common law of England ... is declared to be the common law of the State of Hawaii in all cases, except as otherwise expressly provided by ... the laws of the State, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage[.]").

■ Finally, we do not mean to suggest that a statutory right, relating to jury trial or otherwise, cannot be abrogated once conferred. Our ruling is limited to the effect of article I, section 13, which preserves the right to a jury trial as it existed in 1959. Apart from the past or present terms of the relevant statutes, we decide that, as between the common-law practice of England, and its analogue developed under this jurisdiction, the latter controls for purposes of article I, section 13.

This holding leads us to the second question under *Markman*, whether the particular issue or issues arising in an action are "necessarily jury issue[s], the guarantee being essential to preserve the right to a jury's resolution of the ultimate dispute." *Id.* at 377, 116 S.Ct. 1384. In line with the approach of the United States Supreme Court, we resolve this question by, first, "look[ing] to history to determine whether the particular issues, or analogous ones, were decided by judge or jury in suits at common law at the time the [constitution] was adopted." *Del Monte Dunes*, —— U.S. at ——, 119 S.Ct. at 1643 (brackets added). When history fails as a guide, "we consult precedent [postdating the adoption of the constitution] and consider both the relative interpretive skills of judges and juries and the statutory policies that ought to be furthered by the allocation." *Markman*, 517 U.S. at 384, 116 S.Ct. 1384 (brackets added).

■ Under the historical practice of this jurisdiction, juries in eminent domain actions have decided the sole issue of the fair market value of the condemned property. *See, e.g., Territory v. Ala Moana Gardens, Ltd.*, 39 Haw. 514, 518 (1952) (noting that the only issue before the jury was the value of the property); *State v. Heirs of Halemano Kapahi*, 48 Haw. 101, 112, 395 P.2d 932, 939 (1964) ("[T]he value of the land taken ... is the sole question before the jury."). Article I, section 13 ensures that jury assessments of fair market value will continue as a matter of right. We still must decide, however, the question originally posed by Ferguson in this appeal, namely, whether the jury must determine blight of summons damages in order to preserve the "substance" of the jury right as it existed in 1959. In this connection, we observe that "[o]nly those incidents which are regarded as fundamental, as inherent in and of the essence of the system of trial by jury, are placed beyond the reach of the legislature." *Markman*, 517 U.S. at 377–78, 116 S.Ct. 1384 (quoting *Tull*, 481 U.S. at 426, 107 S.Ct. 1831).

No right to a jury determination of blight of summons damages existed under the common-law practice of this jurisdiction. Indeed, until our decision in *Midkiff, supra*, issued long after the adoption of the constitution, blight of summons damages were determined by a fixed rate set by statute.[15] From a general perspective, however, juries in actions at law have historically determined issues of fact, *see Richardson*, 76 Hawai'i at 513, 880 P.2d at 188 (discussing the "right to ultimately have a jury determine issues of fact"); *Baltimore & Carolina Line*, 295 U.S. at 657, 55 S.Ct. 890, and money damages in particular, *see Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 79 n. 22, 919 P.2d 969, 991 n. 22 (1996) ("[I]n a jury trial of an action seeking equitable and legal remedies the jury decides legal questions and awards legal damages[.]"); *Feltner*, 523 U.S. at ——, 118 S.Ct. at 1287. History, therefore, provides mixed answers in this case.

Review of the prior precedent of this court, however, reveals that, even as we identified

---

15. Even today, blight of summons damages are fixed in HRS chapter 101 eminent domain actions. *See* HRS §§ 101–25 (1993) and 101–33

(1993); *City and County of Honolulu v. Bonded Inv. Co.*, 54 Haw. 385, 507 P.2d 1084 (1973); *Midkiff*, 69 Haw. at 250, 739 P.2d at 250.

blight of summons damages as "a matter of fact," *see Midkiff*, 69 Haw. at 251, 739 P.2d at 251, we decided that the judge should assess such damages after the jury determined fair market value. In *Midkiff*, for example, we remanded the blight of summons damages issue with orders that:

> the court below should hold an evidentiary hearing and allow the parties to present any competent evidence, of matters not merely speculative, which would bear on the amount of blight of summons damages to be fixed as part of just compensation, and then, considering that evidence, together with all the facts and circumstances of the case, make a finding of fact as to the amount of damages, expressed as a rate of interest, which will, in this particular case, effect an award of just compensation.

*Id.* at 251–52, 739 P.2d at 251. We acknowledged that determination of such damages "will be difficult for the trial judge but no mechanistic formula will produce just compensation in all cases." *Id.* at 251, 739 P.2d at 251. *See also Housing Fin. & Dev. Corp. v. Castle*, 72 Haw. 383, 384, 819 P.2d 82, 84 (1991) ("[A]fter valuation had been fixed by the jury, it was necessary for the court to hold a fact hearing to determine the blight of summons damages[.]").

▇▇▇▇▇ Turning to policy considerations, we recognize that questions of fact normally fall within the province of the jury. We do not, however, believe the factual nature of blight of summons damages to be dispositive in this case.[16] As *Midkiff* indicates, we view blight of summons damages as an ancillary issue arising incidentally from the primary question of valuation before the jury in condemnation proceedings. An analogy to prejudgment interest is instructive along these lines. Both blight of summons damages and prejudgment interest provide necessary compensation for delays in actual payment. *See Kalawaia v. AIG Hawai'i Ins. Co.*, 90 Hawai'i 167, 172, 977 P.2d 175, 180 (1999) (citing *West Virginia v. United States*, 479 U.S. 305, 310, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987)). In the case of prejudgment interest, HRS § 636–16 (1993) authorizes the judge, in "conform[ance] with the circumstances of each case," to determine the award by designating the commencement date of the statutory interest rate. Notwithstanding the factual basis of prejudgment interest, it is well-settled that the judge determines such awards. *See Roxas v. Marcos*, 89 Hawai'i 91, 153, 969 P.2d 1209, 1271 (1998). We discern no sound reason for a different result in the case of blight of summons damages.

In sum, we do not consider blight of summons damages an issue so "fundamental . . . [to] the system of trial by jury" as to lie beyond the legislature's discretion, protected by article I, section 13's constitutional guarantee.[17] *Cf.* Cal.Civ.Proc.Code § 1268.340 (West 1982) (providing that the judge shall determine interest in condemnation actions); N.J. Stat. Ann § 20:3–32 (West 1997) (same). Reaffirming our ruling in *Midkiff*, we hold that the "substance" of the jury trial right existing in 1959 does not include the jury determination of blight of summons damages. Accordingly, no right to a jury determination of blight of summons damages exists under article I, section 13.

16. Exclusive reliance on the often indistinct law-fact dichotomy can lead to anomalous results. For example, although it has long been recognized in this jurisdiction that the issue of "public purpose" in condemnation actions lies within the authority and expertise of the judge, *see Hawaii Hous. Auth. v. Ajimine*, 39 Haw. 543, 550, 1952 WL 7381 (1952) ("[T]he issue of public use is a judicial question and one of law to be decided on the facts and circumstances of each particular case."); HRS § 101–34 (1993) (providing for a trial "without jury" on public use issue), the United States Supreme Court held in *Del Monte Dunes* that the jury rightfully determined whether the challenged regulation "deprived the landowner of all economically viable use" and "substantially advanced a legitimate public interest," emphasizing the "factbound" nature of these issues. *Id.* at ———, 119 S.Ct. at 1643–44.

17. We note that other courts, based on the view of interest as part of "just compensation," have decided that a right to jury trial exists with respect to interest. *See Sintra, Inc. v. City of Seattle*, 131 Wash.2d 640, 935 P.2d 555 (1997); *Illinois State Toll Highway Auth. v. American Nat'l Bank & Trust Co. of Chicago*, 162 Ill.2d 181, 205 Ill.Dec. 132, 642 N.E.2d 1249 (1994). These courts, however, premised their decisions on express constitutional provisions establishing a right to a jury determination of "just compensation." *See Sintra*, 935 P.2d at 564 (citing Wash. Const. art. I, § 16); *Illinois Highway*, 205 Ill. Dec. 132, 642 N.E.2d at 1254 (citing Ill. Const. art. I, § 15). Article I, section 13 of our state constitution contains no such express mandate.

### 2. Trial court's exclusion of any evidence of blight of summons damages from the jury

 Ferguson further argues that the trial court erred, if not by refusing to submit the blight of summons damages issue to the jury, then by failing to inform the jury of the existence of blight of summons damages. Decisions by the court in a condemnation proceeding to admit or exclude evidence involve the exercise of discretion and are reviewed under the "abuse of discretion" standard. *See State v. Dillingham Corp.*, 60 Haw. 393, 411, 591 P.2d 1049, 1060 (1979) (holding that the trial judge has broad discretionary authority to admit or exclude evidence in eminent domain proceedings); *Kapahi's Heirs*, 48 Haw. at 112, 395 P.2d at 939 (trial judge's determinations on admissibility of evidence in eminent domain proceedings "will not be upset on appeal unless it is a clear abuse of discretion.").

In support of this allegation of error, Ferguson offers little more than speculation that the jury, when calculating fair market value, might tend to overcompensate the condemnee if not aware that the condemnee duly receives blight of summons damages.[18] Ferguson's argument assumes that lay jurors would: 1) know about blight of summons damages; 2) know that the condemnee was entitled to such damages in addition to fair market value of the property; 3) not know that the court awards blight of summons damages; 4) of their own accord, exaggerate their calculation of fair market value in order to account for blight of summons damages. This reasoning is far-fetched and finds no basis in the available record. We hold that Ferguson has failed to demonstrate that the trial court abused its discretion by excluding evidence regarding blight of summons damages from the jury.

### 3. Trial court's calculation of blight of summons damages

 Ferguson also alleges error in the trial court's determination of blight of

summons damages, arguing that the trial court improperly arrived at the rate of 9.25% based on alleged animosity towards Ferguson and purportedly biased testimony by Castle's expert witness. Although our case law does not provide a specific standard of review, we again refer to the law of prejudgment interest for guidance. Prejudgment interest awards are reviewed under the "abuse of discretion" standard. *See Roxas*, 89 Hawai'i at 127, 969 P.2d at 1235 (quoting *Eastman v. McGowan*, 86 Hawai'i 21, 27, 946 P.2d 1317, 1322–23 (1997)). We adopt the same standard for reviewing blight of summons damages calculations.

After Ferguson refused lessor's settlement offer of 8% blight of summons damages, the court held a full evidentiary hearing to determine the proper rate based on prevailing market conditions. Ferguson points to no error in the trial court's findings of fact or conclusions of law apart from general allegations of bias and conspiracy. Ferguson, moreover, fails to provide the transcript of the relevant hearing. We have stated that "[the burden is upon appellant in an appeal to show error by reference to matters in the record, and he has the responsibility of providing an adequate transcript]." *Bettencourt*, 80 Hawai'i at 230, 909 P.2d at 558 (citation omitted). "An appellant must include in the record all the evidence on which the lower court might have based its findings and if this is not done, the lower court must be affirmed." *Union Bldg. Materials Corp. v. The Kakaako Corp.*, 5 Haw.App. 146, 151–52, 682 P.2d 82, 87 (1994) (citation omitted). Inasmuch as review of the record before us reveals no abuse of discretion by the trial court, we leave its calculation of blight of summons damages for Ferguson at 9.25% undisturbed.

### C. Trial Court's Denial of Ferguson's Request for Rebuttal

 Ferguson also argues that the trial court erred in refusing his request to call a

---

18. Ferguson also alleges that Judge Kochi previously ruled that lessees had a right to a jury trial on blight of summons damages, thereby establishing law of the case regarding the issue. Ferguson does not provide a record citation, and review of the record reveals no trace of such a ruling.

rebuttal witness, who would have testified that one of Castle's expert witnesses violated the ethical standards of his profession by failing to disclose his marital relationship with a partner in the firm representing Castle. Again, Ferguson's failure to provide the relevant transcripts limits the scope of our review.

HRS § 516–56 grants each party in a chapter 516 condemnation action the opportunity to present evidence of fair market value at trial, but does not require the trial court to grant the parties rebuttal or surrebuttal. HRS § 101–11, however, provides that "the procedure shall be the same as in other civil actions." In civil trials generally, "the introduction of evidence in rebuttal and in surrebuttal is a matter within the discretion of the trial court and appellate courts will not interfere absent a abuse thereof." *Ditto v. McCurdy*, 86 Hawai'i 84, 87, 947 P.2d 952, 955 (1997) (citations omitted).

According to his brief, Ferguson sought to call a rebuttal witness to prove, not that the alleged conflict actually existed, but that the witnesses' failure to disclose the alleged conflict breached the ethical standards of conduct of his profession. Ferguson represents, however, that he brought the alleged conflict to the jury's attention in cross-examination. Evidence on ethical standards would have provided the jury with additional, but not essential, information for its determination of witness credibility. The record demonstrates that the court fully instructed the jury on its role as "sole judges of the credibility of all witnesses, and the weight their testimony deserves." Based on the limited observations allowed by the inadequate record, for which Ferguson must bear responsibility, and Ferguson's representation that he raised the matter before the jury in cross-examination, we hold that Ferguson has failed in his burden to show that the trial court abused its discretion in denying Ferguson's request for rebuttal.

#### D. Ferguson's Claims of Excessive Administrative Costs

■ Ferguson argues that the trial court erred in denying his request that the State's presence at the trial be limited to opening and closing statements. Ferguson also raises, for the first time on appeal, wide-ranging complaints about the cost of chapter 516 proceedings. According to Ferguson, the administrative fees generated by the State's participation in the trial impose an undue burden on lessees in a chapter 516 proceeding, particularly where the State offers little, if any, important input. Ferguson argues that the administrative costs undermine the purpose of chapter 516 by making chapter 516 actions cost-prohibitive. Ferguson does not provide any legal basis for his arguments or any explanation as to why he considers this court the proper forum for addressing them.

■ The State, as the condemnor, is a necessary party in any chapter 516 action. *See* HRS § 516–56 ("The parties to the eminent domain action brought under this chapter shall be the [State] as plaintiff and the lessees and all other necessary parties as defendants."). HRS § 516–56 provides all parties an "opportunity to present evidence of the fair market value of the leased fee interest being acquired." The State, though present throughout the trial, did not take any position or submit any evidence. Whether or not the State actively participates in a leasehold condemnation trial, however, it remains by statute a necessary party to the action.

■ As for Ferguson's general complaints, styled as a "point of error," about the cost of chapter 516 proceedings, these arise solely from Ferguson's disagreement with legislative or administrative policy and thus do not present questions suitable for judicial review. *See generally Trustees of the Office of Hawaiian Affairs v. Yamasaki*, 69 Haw. at 154, 170–71, 737 P.2d 446, 455–56 (1987) (explaining the limited role of the judiciary in the tripartite state government).

#### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.