284 P.3d 932

**William D. HOSHIJO, Executive Director on Behalf of the Complaint filed by Del M. Scotto, and the Civil Rights Commission, State of Hawaii, Appellant–Appellee,**

v.

**Janene CARACAUS, Appellee–Appellant (Civil No. 07–1–1325).**

and

**Loretta Ramos, Executrix of the Estate of Del M. Scotto, Appellant–Appellee,**

and

**Janene Caracaus, Appellant–Appellant,**

v.

**Lisa Wong, Sarah Banks, Leslie Alan Ueoka, and Mark G. Valencia, in their official capacities as Commissioners of the Hawaii Civil Rights Commission, Department of Labor & Industrial Relations, State of Hawaii, William D. Hoshijo, in his official capacity as Executive Director of the Hawaii Civil Rights Commission, Department of Labor & Industrial Relations, State of Hawaii, Appellees–Appellees (Civil No. 07–1–0230).**

No. 29290.

Intermediate Court of Appeals of Hawai'i.

April 27, 2012.

As Corrected May 17, 2012.

NAKAMURA, Chief Judge, FOLEY and LEONARD, JJ.

Opinion of the Court by LEONARD, J.

This is a secondary appeal from the Circuit Court of the First Circuit's (**Circuit Court's**) [1] *de novo* review of a decision of the Hawaiʻi Civil Rights Commission (**HCRC**).[2] Appellant–Appellant–Respondent Janene Caracaus (**Caracaus**) appeals *pro se* from the Circuit Court's July 2, 2008 Findings of Fact and Conclusions of Law (**FOFs/COLs**), in which the Circuit Court (1) affirmed the HCRC's decision finding that Caracaus evicted Complainant Del M. Scotto (**Scotto**), now deceased, because of his disability caused by prostate cancer, and that her eviction of Scotto violated Hawaii Revised Statutes (**HRS**) § 515–3 (2005), and (2) awarded damages against Caracaus and in favor of Appellant–Appellee Loretta Ramos, as Executrix of the Estate of Del M. Scotto (**Ramos**), including $7,000 in special damages, $10,000 in general damages, and $10,000 in punitive damages.

Caracaus raises several points of error on appeal, which are enumerated below. The threshold issue raised, however, is whether she was improperly denied a jury trial. We hold that, because the Hawaiʻi Supreme Court has held that a fundamental constitutional right to jury trial exists when a person is faced with substantial legal damages in a statutory discrimination action and, under the facts of this case and the applicable statutory provisions and rules Caracaus did not waive her right to a jury trial, the Circuit Court erred in rejecting Caracaus's demands for a jury trial. Accordingly, we vacate and remand for further proceedings.

Janene Caracaus, on the briefs, Appellant Pro Se.

Frances E.H. Lum, Deputy Attorney General, Department of the Attorney General, on the briefs, for Appellees William D. Hoshijo and Hawaii Civil Rights Commission, State of Hawaiʻi.

M. Nalani Fujimori, Russ S. Awakuni, Rebecca E. Quinn, (Legal Aid Society of Hawaii), on the briefs, for Appellee Loretta Ramos, Executrix of the Estate of Del M. Scotto.

I. *RELEVANT BACKGROUND* [3]

A. *Scotto's Eviction*

Beginning in February of 2005, Scotto rented a room in a Hilo house owned by

1. The Honorable Eden Elizabeth Hifo presided.

2. Caracaus filed an appeal from the HCRC's decision in the First Circuit. After Scotto's death, the executrix of his estate filed an appeal in the Third Circuit. Thereafter, the parties stipulated to consolidate the appeals in the case pending in the First Circuit.

3. The "Relevant Background" information is adapted from the Circuit Court's FOFs/COLs and the HCRC's Final Decision and Order. Caracaus herein challenges the Circuit Court's ruling that

Caracaus. During the period relevant to this case, Caracaus was mostly an absentee landlord because she worked as a traveling nurse. Caracaus worked in Los Angeles from about February to July 2005 and thereafter in Honolulu. She stayed at the Hilo house one or two times a month.

In March of 2005, Scotto sought treatment in connection with urinary frequency and discomfort. Testing revealed an elevated level of PSA (prostate-specific antigen), indicating the possibility of prostate cancer. After further medical consultation in August of 2005, in early October of 2005, it was confirmed that Scotto had prostate cancer. Because Caracaus was a nurse, Scotto spoke with her about his condition and sought her advice. Caracaus recommended that Scotto return to California, where he apparently had family, because he would become weaker and would need help.

Caracaus testified before the HCRC that Scotto was smoking marijuana at the house, as well as using alcohol, methadone, and morphine, that he was not keeping the place or doing work around the property, and that he was burdening other tenants with his laundry and chores. Although Scotto said that he had a California medical marijuana permit, Scotto did not get a Hawai'i permit until November 30, 2005. Caracaus said that she was concerned that Scotto was abusing prescription and illegal drugs, which affected his ability to care for himself. Caracaus also said that she was concerned that the discovery of illegal drug use at her home might jeopardize her nursing license.

By letter dated October 16, 2005, Caracaus terminated Scotto's tenancy, stating:

> I have done a lot of thinking about your recent tests and considering the fact that you will be needing further treatment, I think it best that you return to California or somewhere there will be someone to help you through whatever treatment you decide on.
>
> Of course, this is your decision but effective December 1, I will have to rent the

apartment to another family. I appreciate all you have done for me and I like you very much, but there is still quite a bit of work needing to be done and I should not expect you to be able to tackle this monumental job.

> You must take my word for it that you will get weaker and you will then be in a situation where you cannot do anything. I have seen many cases of cancer in my experience as a nurse.
>
> Steve the contractor and his wife and son will be moving in on the first of December.

Upon reading the letter, Scotto was very upset and stressed about being evicted and having to find another place to live, especially after just being diagnosed with cancer. Scotto vacated the premises. A few days after moving, Scotto fell and broke his hip, resulting in a lengthy hospitalization. His belongings were put in storage, apparently at Scotto's request, by Steve Stagg, a contractor who did some work for Caracaus (**Stagg**). Stagg later informed Scotto that Stagg had failed to pay the storage fee and Scotto's belongings were confiscated. Scotto testified that his lost belongings had a value of between $7,000 and $8,000.

### B. *The HCRC Proceedings*

On January 19, 2006, Scotto filed a Complaint with the HCRC alleging that Caracaus terminated his tenancy at the Hilo house because of his disability. Initial attempts to serve Caracaus with the Complaint, by mail sent to the Hilo house, were unsuccessful. The Complaint was returned to the HCRC unclaimed. It appears that Caracaus may have been living in Mexico at the time, while attending medical school there. Although the record contains no proof of service, and it appears that further attempts to effect service of the Complaint and a proposed conciliation agreement were ineffective, telephone contact was made with Caracaus, a copy of the Complaint was "served" on a tenant at

---

Caracaus waived her right to a jury trial, thus challenging the Circuit Court's fact-finding role. Neither the prior findings of fact nor this court's summary of the background facts, except as they describe the proceedings before the HCRC and the various courts, are binding upon the finder of fact upon the remand of this case.

the Hilo house, and Caracaus apparently became aware of the HCRC proceedings.

HCRC attorney Frank Kim (**Kim**), representing HCRC Executive Director William D. Hoshijo (**Executive Director**), on behalf of the complaint filed by Scotto, attested that, on or about May 15, 2006, he sent a copy of a "Notice of Finding of Reasonable Cause to Believe that Unlawful Discriminatory Practices Have Been Committed" to Caracaus at the Hilo home address, which was subsequently returned to him undelivered because it was "not deliverable as addressed—unable to forward." Kim later attested to his further attempts to serve Caracaus at a San Ysidro, California post office box address, including that the mail was returned as "refused." An Ex Parte Motion for Order of Service of Notice by Publication was filed by Kim, on behalf of the Executive Director, on July 17, 2006. It appears, however, that no action was taken on the motion because no order appears in the file;[4] nor does the file include any proof of service by publication (or otherwise).

The Complaint was docketed on July 18, 2006, and, on August 22, 2006, a scheduling order was filed by HCRC Hearings Examiner Livia Wang (**Wang**), setting the matter for hearing during the week of January 8, 2007. Caracaus participated in the HCRC proceedings, primarily (if not exclusively) by telephonic and email communications.[5]

On or about October 10, 2006, it appears that Caracaus called Wang's office and stated that Caracaus wanted to remove the case to federal court. The record contains a document that is identified in the index of the record on appeal as an email from Wang to Caracaus, which is hand-dated October 12, 2006,[6] and states:

Dear Ms. Caracaus:

In housing discrimination cases, both the complainant (plaintiff) and the respondent (defendant) have the right to take a case out of the administrative hearing process into a court. This process is set out in Hawaii Revised Statutes (HRS) section 515–9(3) and in Hawaii Administrative Rules (HAR) sections 12–46–20(a) and (b). I sent you copies of these statutes and rules together with the docketing notice on July 18, 2006.

According to this statute and these rules, the process for a respondent is as follows. When the Executive Director finds that there is reasonable cause to believe that discrimination has occurred, it issues a Notice of Finding Reasonable Cause and notifies the respondent that he or she may elect to take the case to a court. (See, HAR section 12–46–14(a).) Within 20 days of receiving the Notice of Finding Reasonable Cause, if a respondent wants to take the case to court, he or she must request, in writing, that the Executive Director issue a notice of right to sue. (See HAR section 12–46–10(b)(3).) Within 90 days after the Executive Director issues the right to sue to the respondent, the Executive Director will then file an action in court. (See HAR section 12–46–20(a)(3).) This is how a respondent is able to remove a case out of the administrative hearing process into a court.

However, if a respondent decides to stay in the administrative hearing process, and if I and the Commissioners issue a decision against the respondent, the respondent still has the right to appeal that decision to a court, which is free to reverse the decision. Therefore, if you decide to stay in

---

4. An unsigned copy of a proposed order, drafted for the Hearings Examiner's signature, is attached to the motion.

5. The record of the HCRC proceedings is incomplete. In some instances, email communications are included without their attachments. In other instances, portions of emails are included, without the "heading" that indicates the date, time, and identity of sender/recipient(s) and without the complete series of connected emails or "email trail" that, from the appearance and context of the message, must have existed. In addi-

tion, although Kim attested to sending Caracaus a "Notice of Reasonable Cause" in his July 17, 2006 Supplemental Affidavit, and Wang later referenced Kim's averment, no such Notice of Reasonable Cause appears in the record.

6. The date is handwritten at the top and one or more pages of the "email," which appears to be part of an email trail, were not included in the record. It is not clear whether or when this email was sent or, possibly, whether it was a draft that was unsent.

the administrative hearing process, you will still be able to have a court review the case if there is a ruling against you. (See HRS section 368–16, HAR section 12–46–39.)

Please contact me if you have any other questions.

Very truly yours,

Livia Wang

Hearings Examiner

Another email was sent to Caracaus the same day, October 12, 2006, at 3:16 p.m., with a copy to Kim, stating, *inter alia:*

This email is to follow up on our telephone conversation of October 10, 2006 and your conversation with my secretary, Cathy Simmons, later that day.

. . . .

I believe that it may be too late for you to remove this case to a court. According to Hawaii Revised Statutes section 515–9(3), you must make an election to file a court action within 20 days of receiving the notice of finding reasonable cause. According the [sic] Mr. Kim's Supplemental Affidavit filed on July 17, 2006, the notice of finding reasonable cause and election to file a court action was sent to you by certified mail on or about June 30, 2006. While this mail was refused and returned to Mr. Kim, the refusal of the notice could be deemed to be a receipt. However, if you still feel you have a right to remove this case to a court, you must request, in writing, a notice of right to sue to the Executive Director within 20 days of reading this email. (See Hawaii Administrative Rules sections 12–46–20(a)(3), (b)(3).) I do not know if the Executive Director will issue a right to sue to you at this time. If you do not make such a request, the case will continue to proceed though [sic] this administrative hearing process.

Prior to transmitting that email, at 11:34 a.m. on October 12, 2006, Wang received an email from the Executive Director's attorney stating, in relevant part:

I will oppose any attempt by Caracaus to take this matter to court. Just more delay. She has intentionally avoided and refused all mail and is solely responsible for the consequences of her wilful actions . . . she alone bears the penalty for her gamesmanship.

File shows that final demand advising her of 20 day period to request right to sue letter, was sent to her at her [Hilo address] on May 31, 2006 by certified mail, rrr. Enclosed was a separate letter from me re her options.

Mail was returned 'unclaimed' with new address—the P.O. Box in San Ysidro.

Final Demand and my letter was re-mailed to her by certified mail, rrr, on June 30, 2006 to San Ysidro P.O. Box.

Caracaus called me on July 6 and confirmed the San Ysidro address as her address. I informed her that I had sent some documents to her and that she should be getting them shortly.

Notwithstanding our phone conversation on July 6, the mail was returned 'refused' on July 19, 2006, not 'unclaimed', but 'refused.'

In point of fact, the only mail not returned was the disclosure information sent per your scheduling conference order.

This is not a case where respondent is truly ignorant of the proceedings against them, but a case where the respondent is wilfully ducking and avoiding all efforts to communicate with them. As far as I am concerned, by her participation to this point in these proceedings, she has waived and is estopped from raising any procedural complaints . . . re service, etc., etc.

At 6:00 p.m. on October 12, 2006, Wang received an email from Caracaus, which was not copied to Kim, stating:

Dear Ms. Wang:

I am confused. Why would I ask for a right to sue letter when I am the defendant and Mr. Scotto is the one suing me?

Sincerely,

Janene Caracaus

On October 27, 2006, Wang emailed Caracaus, with a copy to Kim:

Dear Ms. Caracaus:

I understand your desire to bring an action in court to dismiss this case. However, I would like to inform you that until

you obtain a right to sue (as outlined in my October 12, 2006 emails to you) and/or a order from a federal or Hawaii state court directing the Hawaii Civil Rights Commission to dismiss this case, the case remains active under the jurisdiction of this commission.

Should you have any questions, please contact me.

Very truly yours,

Livia Wang

Hearings Examiner

Caracaus promptly responded: "I am actively pursuing that order." On October 28, 2006, Caracaus filed *pro se*, in the United States District Court for the District of Hawai'i, a request for removal of the HCRC case to the United States District Court for the District of Hawai'i, along with a request that the federal court dismiss the agency proceeding. On November 6, 2006, the federal court, *inter alia*, denied the motion to dismiss and remanded the case, stating that "[t]here is no provision for removal of an ongoing state administrative proceeding" and that Caracaus's attempt to have the federal court halt the HCRC proceeding "is barred by well-settled abstention doctrines." (Citations omitted.)

After the conduct of discovery and various other pre-hearing proceedings, on January 10, 11, and 12, 2007, a contested case hearing was held. Thereafter, the parties filed written closing arguments. Caracaus filed post-hearing motions, which were denied. On March 13, 2007, Wang filed the Hearings Examiner's Findings of Fact, Conclusions of Law and Recommended Order. Wang found that Caracaus "had both discriminatory and legitimate nondiscriminatory reasons for terminating [Scotto's] tenancy[.]" Wang concluded that the Executive Director was, therefore, limited to declaratory and equitable relief. Wang recommended that the HCRC order Caracaus to "cease and desist from discriminating against all other tenants or individuals on any protected basis, including disability" and direct Caracaus to adopt

and post at her rental unit(s) a written non-discrimination policy.

After considering the parties' exceptions to Wang's recommendations and hearing oral argument, on June 22, 2007, the HCRC adopted the Hearings Examiner's Findings of Fact, Conclusions of Law and Recommended Order. In a July 17, 2007 order, the HCRC rejected the Executive Director's motion for reconsideration, but clarified that "in mixed motive cases where there are discriminatory and nondiscriminatory reasons for an adverse action, the Commission is not limited to granting declaratory and injunctive relief and has the discretion under HRS §§ 515–13 and 368–17 to award damages."

### C. *The Circuit Court Proceedings*

On July 18, 2007, Caracaus filed a notice of appeal in the First Circuit Court, which was designated as Civil No. 07–1–1325–07. On July 23, 2007, Ramos filed a notice of appeal in the Third Circuit Court, which was designated as Civil No. 07–1–0230.[7] Although Caracaus's notice of appeal was filed in the First Circuit Court prior to Ramos's notice of appeal being filed in the Third Circuit Court, the HCRC filed the record on appeal in the Third Circuit Court on August 31, 2007. On August 31, 2007, the HCRC filed a motion to dismiss the appeal filed by Caracaus in the First Circuit Court, arguing lack of jurisdiction or improper venue based on the Hilo location of the rental property.

On September 12, 2007, the HCRC filed an *ex parte* motion in the First Circuit Court proceeding seeking an extension of time to transmit the record in that case until after the hearing on the motion to dismiss. HCRC stated that it wanted to avoid having to transmit the record a second time, because the record already had been transmitted once to another court, *i.e.*, the Third Circuit Court. The *ex parte* motion was granted the same day.

On the next day, September 13, 2007, the HCRC withdrew its motion to dismiss the appeal filed by Caracaus in the First Circuit Court.

---

7. More specifically, Ramos's notice of appeal was submitted to the First Circuit Court for *ex officio* filing in the Third Circuit, as permitted by

Rule 2.1 of the Rules of the Circuit Court of the State of Hawai'i.

By a stipulation and order entered in the Third Circuit Court proceeding on October 19, 2007, the cases were consolidated into a single proceeding in the First Circuit Court. On October 25, 2007, the clerk of the First Circuit Court received and entered the Third Circuit Court file, including the record on appeal. On October 30, 2007, a stipulation and order for consolidation of the proceedings was entered in the First Circuit Court.

On November 28, 2007, the Circuit Court issued a schedule for briefing and argument. The court heard argument on May 13, 2008, and entered the FOFs/COLs on July 2, 2008.

In its FOFs/COLs, the Circuit Court began by addressing Caracaus's claim that she had a right to a jury trial:

The first issue on appeal is whether Ms. Caracaus has waived her right to jury trial. The record shows there has been no timely demand, thereby constituting waiver.

The applicable statute is Section 519–9(3)[sic] of Hawaii Revised Statutes regarding discrimination in real property transactions. Section (3) was enacted in 1992 and expressly disregarded Chapter 368 requirements ('Chapter 368 to the contrary notwithstanding . . .') which include Section 368–12, enacted in 1989. Unlike Section 368–12, the statutory procedure adopted in Section 519–9(3)[sic] allows both the complainant and/or respondent to opt out of the HCRC proceedings following a finding of reasonable cause by going to circuit court. If either Respondent Caracaus or Complainant Scotto had so elected, then was the time for either of them to file a demand for jury trial because failure to elect circuit court trial would result (as it did here) in the HCRC having a contested case hearing and issuing a decision from which appeal de novo to the circuit court pursuant to HRS Section 91–14 (as it is here) would be the only remaining avenue either or both could take.

Thus the Supreme Court decision in *SCI Management Corporation v. Sims,* 101 Hawai'i 438, 71 P.3d 389 (2003), holding that 'a respondent who appeals a final order of the HCRC, pursuant to HRS Section 368–16, is entitled to a jury trial on any claims that form the basis for an award of common law damages by the HCRC', *id.* at 442 [71 P.3d 389], was construing Section 368–12 and arose in connection with allegations of prohibited employment practices involving sexual harassment and retaliation where respondents demanded jury trial following determination of reasonable cause. The Hawaii Supreme Court decision did not allow respondent employers to opt out at that point but rather gave them the right to jury trial as an election to administrative appeal pursuant to Chapter 91 after an HCRC contested case hearing. *SCI Management Corporation* is not applicable to Section 519–9(3)[sic] which does allow respondents to opt out after the determination of reasonable cause. But where there is such an option, the respondent must act timely, otherwise the party 'waives his or her right to a jury trial.' *Id.* at 452 n. 12 [71 P.3d 389]. Likewise, failure to make timely demand of jury trial constitutes election in favor of contested case hearing with later Chapter 91 circuit court review de novo. *Id. State v. Hoshijo ex rel. White,* 102 Hawai'i 307 [76 P.3d 550] (Sup. Ct.2003) (Chapter 91 appeal from HCRC final order is de novo review in the circuit court).

In this case the record is clear and the court finds that HCRC informed Ms. Caracaus of her right to trial consistent with Section 519–9(3)[sic] after the determination of reasonable cause, explained the procedure to be followed and responded to Ms. Caracaus' intelligent question as to how the law works with clear explanation and instruction.

The Circuit Court continued by quoting, as the "credible record on this issue", Caracaus's October 12, 2006 inquiry asking why she would ask for a right to sue letter and Wang's October 12, 2006 hand-dated "email" explaining the process involved in housing discrimination cases. The Circuit Court then concluded:

Thereafter, Ms. Caracaus did not take the requisite action but instead unsuccessfully attempted removal to federal court and dismissal by federal court of the

HCRC proceeding. United States District Court Judge Samuel P. King denied both motions by order dated November 6, 2006. On this record, this Court finds and concludes Ms. Caracaus waived her right to jury trial. Thus, this Court proceeds with de novo review pursuant to Chapter 91 and *State v. Hoshijo, supra.*

In its Chapter 91 review, the Circuit Court, *inter alia,* rejected Caracaus's assertion of a legitimate motive, and the HCRC's finding of a mixed motive, for Scotto's eviction. The Circuit Court affirmed the relief granted by the HCRC. In addition, the court awarded Ramos special damages in the amount of $7,000, general damages in the amount of $10,000, and punitive damages in the amount of $10,000, plus reasonable attorney's fees.

## II. *POINTS OF ERROR*

Caracaus enumerates the following points of error on her appeal to this court: [8]

1. Abuse of discretion because the court made a determination that was unsupported by the evidence in the record—willful, wonton [sic] and grossly negligent;

2. Abuse of discretion—did not address challenge of constitutionality of HRS 515-3 and HAR 12-46-317 as overbroad;

3. Abuse of discretion—awarding unproven damages without jury trial;

4. Abuse of discretion—denying Caracaus a jury trial;

5. Misinterpreted the law—the court did not consider whether obedience to one law precludes prosecution under another law; and

6. Abuse of Discretion—did not consider deprivation of equal protection and due process.

(Format altered.)

## III. *APPLICABLE STANDARDS OF REVIEW*

■ As explained in *State v. Hoshijo ex rel. White,* 102 Hawai'i 307, 314–17, 76 P.3d 550, 557–60 (2003), appeals from the HCRC

are subject to one standard of review at the circuit court level and another standard of review on appeal from the decision of the circuit court. The supreme court clarified that pursuant to the specific language of HRS § 368–16(a), which is concerned solely with the standard of review applicable to an HCRC decision, the circuit court must apply a *de novo* standard of review, as opposed to the HRS § 91–14(g) standards of review applied to most agency decisions. *Id.* at 316, 76 P.3d at 559. On appeal from a circuit court's *de novo* review of an HCRC decision, this court reviews the circuit court's findings of fact under the clearly erroneous standard and the circuit court's conclusion of law *de novo.* *Id.* at 317, 76 P.3d at 560.

## IV. *DISCUSSION*

We begin, as the Circuit Court did, with the question of whether Caracaus waived her right to a jury trial. As set forth above, the Circuit Court concluded that Caracaus waived her right to a jury trial by failing to make a timely demand. The Circuit Court based its conclusion on: (1) the differences in the HCRC procedures provided in HRS § 515–9(3) and HRS § 368–12; (2) the court's determination that those statutory differences render the Hawai'i Supreme Court decision in *SCI Mgmt. Corp. v. Sims,* 101 Hawai'i 438, 71 P.3d 389 (2003), inapplicable to this case; and (3) the court's determination that Caracaus failed to take the "requisite action" to opt out of the contested case hearing process.

Article I, section 13 of the Hawai'i Constitution provides that "[i]n suits at common law where the value in controversy shall exceed five thousand dollars, the right of trial by jury shall be preserved."

In *SCI Mgmt. Corp.,* 101 Hawai'i 438, 71 P.3d 389, the Hawai'i Supreme Court analyzed whether respondents in an HCRC proceeding were entitled to a jury trial on damages claims stemming from allegations of unlawful discriminatory practices including sexual harassment and retaliation in an em-

---

**8.** Caracaus's points of error do not comply with Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4). We have, nevertheless, attempted to review the merits of the arguments presented. *See Hous. Fin. & Dev. Corp. v. Ferguson,* 91 Hawai'i 81, 85, 979 P.2d 1107, 1112 (1999).

ployment context.[9] The supreme court explained that, where a statutory action provides traditional forms of legal relief, such as compensatory and punitive damages, the right to a jury trial pursuant to article I, section 13 of the Hawai'i Constitution is triggered. *Id.* at 446, 71 P.3d at 397. With respect to discrimination claims before the HCRC, the court stated:

> HRS § 368–17(a) (1993) provided that the remedies ordered by the HCRC or the court under HRS chapter 368 may include compensatory and punitive damages and legal and equitable relief, including, but not limited to ... payment to the complainant of damages for an injury or loss caused by a violation of HRS chapters 368, 489, 515, or part I of chapter 378, ... including a reasonable attorney's fee ... and other relief that the HCRC or the court deems appropriate. Thus, by its plain language, HRS chapter 368 empowers the HCRC to award legal forms of relief. Moreover, in the proceedings before the HCRC from which the present matter arises, the complainants and the executive director claim legal relief in the form of monetary damages—i.e., $400,000.00 in alleged general damages, including but not limited to emotional distress—for each complainant. Consequently, we agree with the [employer-respondents] that they are entitled to a jury trial with respect to the complainants' allegations of sexual discrimination and retaliation.

*Id.* at 446–47, 71 P.3d at 397–98 (internal quotation marks, original brackets, and footnote omitted).[10]

As stated by the supreme court, this constitutional right to a jury trial arises under HRS Chapter 515, which addresses discrimination in real property transactions, as well as part I of Chapter 378, which addresses employment discrimination, Chapter 489, which addresses discrimination in public accommodations, and Chapter 368, which grants the HCRC or the courts the power to award legal relief in the form of money damages. The supreme court firmly rejected the complainants' argument that good policy reasons exist for allowing complainants to "opt out" of HCRC proceedings, but not respondents, stating:

> Even if [such] unsubstantiated assumptions were correct, however, such pecuniary concerns cannot in and of themselves abrogate a party's fundamental right to a jury trial.... If the legislature wishes to provide employees with greater assistance in prosecuting claims of employment discrimination, there is a variety of ways in which it may do so without divesting employers of the constitutional right to trial by jury.

*SCI Mgmt. Corp.,* 101 Hawai'i at 450–51, 71 P.3d at 401–02 (citations omitted).

The court then repeated its holding:

> In sum, and to reiterate, we hold that, as HRS chapter 368 is currently written, a respondent before the HCRC is entitled to a jury trial with respect to claims that seek traditional forms of legal relief, including compensatory and punitive damages, on behalf of complainants before the HCRC. Accordingly, we further hold that, in the

---

9. *SCI Mgmt. Corp.* was an action for declaratory and injunctive relief filed by employers who were respondents in a separate employment discrimination action initiated before the HCRC. 101 Hawai'i at 441–42, 443, 71 P.3d at 392–93, 394. Thus, the employer-respondents were the "plaintiffs" and the employee-complainants were the "defendants" in the declaratory judgment action. For ease of comprehension, we refer to the parties by reference to their roles in the underlying employment discrimination proceedings.

10. The supreme court rejected the complainants' argument that the "public rights" doctrine should be applied. *SCI Mgmt. Corp.,* 101 Hawai'i at 447–49, 71 P.3d at 398–400. Public rights, as opposed to private rights, may be im-

plicated when a statutory right is "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution" with limited involvement by the courts and no jury trial requirement. *Id.* at 447–48, 71 P.3d at 398–99 (citations and internal quotation marks omitted). Although not reaching the question of whether, in some circumstances, Hawai'i should adopt the public rights doctrine, the supreme court held, under HRS chapter 368, even though the State is a party to the proceedings before the HCRC, "the adjudication of private rights has clear primacy over the adjudication of public rights" when substantial monetary relief is sought on behalf of complainants. *Id.* at 447, 449, 71 P.3d at 398, 400.

present matter, the [respondent-employers] are entitled to a jury trial with respect to the executive director's demand for $400,000.00 in general damages, payable to each of the complainants, based on the complainants' allegations of sex discrimination and retaliation.

*Id.* at 451, 71 P.3d at 402.

Having unequivocally recognized the fundamental right to a jury trial on discrimination claims seeking money damages, the supreme court addressed the problem of how to implement it. The court began by considering whether respondents are entitled to "opt out" of HCRC employment discrimination proceedings, as complainants may pursuant to HRS § 368–12 and Hawaii Administrative Rules (**HAR**) § 12–46–20. The court answered this question in the negative:

> The foregoing does not require us to hold, however, that the plaintiffs are entitled to 'opt out' of the proceedings before the HCRC.
>
> Although trial by jury in civil cases is a 'fundamental' right in the State of Hawai'i, the right has never been construed so broadly as to prohibit reasonable conditions upon its exercise[.]
>
> Moreover, in holding that a procedure for non-judicial determinations prior to jury trial does not violate the seventh amendment, the United States Supreme Court has stated that the seventh amendment 'does not prescribe at what stage of an action a trial by jury must, if demanded, be had; or what conditions may be imposed upon the demand of such a trial, consistently with preserving the right to it.'
>
> Thus, with regard to mandatory arbitration programs that afford a right to trial de novo, it has been held that
>
>> the only purpose of the seventh amendment is to secure the right of trial by jury before rights of person or property are finally determined. All that is required is that *the right of appeal for*

*the purpose of presenting the issue to a jury must not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable.*

*Thus, laws, practices, and procedures affecting the right to trial by jury under article I, § 13 are valid as long as they do not significantly burden or impair the right to ultimately have a jury determine issues of fact.*

*SCI Mgmt. Corp.*, 101 Hawai'i at 451–52, 71 P.3d at 402–03 (citations and brackets omitted; format altered; emphasis added). The supreme court declined to "rewrite" HRS Chapter 368 to create an "opt out" for respondents, as to do so would conflict with the plain language of the statute. *Id.* at 452, 71 P.3d at 403. Instead, the court fashioned an alternative remedy for HCRC respondents:

> [W]e hold that a respondent who appeals a final order of the HCRC, pursuant to HRS § 368–16, is entitled to a jury trial on any claims that form the basis for an award of common law damages by the HCRC.

*Id.* The supreme court took this extraordinary step because it concluded that its only other options were to declare the statute to be unconstitutional or to engage in a revision better left to the legislative branch. *Id.*[11]

In the case now before us, the Circuit Court considered the supreme court's decision in *SCI Mgmt. Corp.*, but decided that it was inapplicable because, unlike HRS Chapter 368, HRS § 515–9 empowers the HCRC to notify all interested parties that an election may be made to seek redress before a court, rather than the HCRC. HRS § 515–9 provides, in relevant part:

> § 515–9. **Enforcement.** The civil rights commission has jurisdiction over the subject of real property transaction practices and discrimination made unlawful by this chapter. The commission has the following powers:
>
> . . . .

11. In dissent, Justice Acoba respectfully expressed his disagreement with virtually every aspect of the majority's analysis, including the court's recognition of the fundamental right to a jury trial on statutory discrimination claims and the court's remedy, which he described as an encroachment on the legislative and executive branches of government. 101 Hawai'i at 453–66, 71 P.3d at 404–17.

(3) Chapter 368 to the contrary notwithstanding, after a finding of reasonable cause, to notify the complainant, respondent, or an aggrieved person on whose behalf the complaint was filed, that an election may be made to file a civil action in lieu of an administrative hearing. The election must be made not later than twenty days after receipt by the electing party of the notice. The electing party shall be provided with a notice of right to sue which must be exercised within ninety days of receipt of that notice or one year after the filing of the complaint, whichever is later. The commission will provide legal representation to the complainant in the event of an election by any party. After the filing of a civil action, the parties may stipulate to have the matter remanded for an administrative hearing[.]

▇ We agree with the Circuit Court's assessment that the clear intent of HRS § 515-9(3) is to allow either the complainant or respondent (or other aggrieved person) to "opt out" of the HCRC proceeding and to elect to have the claim resolved in a civil action. By contrast, HRS § 368-12 only permits a complainant to opt out of the HCRC proceedings.[12] However, the procedural rules adopted to implement HRS § 515-9(3) are potentially problematic, as manifested by the unique facts of this case. HAR § 12-46-20 provides:

**Notice of right to sue.** (a) A notice of right to sue shall authorize:

(1) A complainant alleging violations of chapters 368, 378, or 489, HRS, to bring a civil suit pursuant to section 368-12, HRS, within ninety days after receipt of the notice;

(2) A complainant alleging violations of chapter 515, HRS, issued such notice before a finding of reasonable cause pursuant to section 515-9(2), HRS, to bring a civil suit within ninety days of receipt of the notice or one

year after the filing of the complaint, whichever is later; or

(3) The executive director to file a civil suit within ninety days of the receipt of the notice of right to sue by a party filing a timely notice of election to file civil action under subsection (b)(3) or one year after the filing of the complaint, whichever is later.

(b) A request, in writing, may be made to the executive director to issue a notice of right to sue:

(1) At any time after the filing of a complaint with the commission, and no later than three days after the conclusion of the scheduling conference provided for in section 12-46-19, by a complainant alleging violations of chapters 368, 378, or 489, HRS;

(2) At any time after the filing of a complaint with the commission but before a finding of reasonable cause under section 515-9(2), HRS, by a complainant alleging violations of chapter 515, HRS; or

(3) Within twenty days after receipt of the notice of election to file a civil action under section 515-9(3), HRS, by any party to a complaint alleging violations of chapter 515, HRS.

(c) The commission's executive director shall issue a notice of right to sue provided that the commission has not:

(1) Previously issued a notice;

(2) Entered into a conciliation agreement to which the complainant is a party; or

(3) Filed a civil action.

(d) The commission's executive director shall issue a notice of right to sue:

(1) Upon dismissal of the complaint pursuant to section 12-46-11; or

(2) Where the commission has entered into a conciliation agreement to

---

12. HRS § 368-12 (1993) provides:

**Notice of right to sue.** The commission may issue a notice of right to sue upon written request of the complainant. Within ninety days after receipt of a notice of right to sue, the complainant may bring a civil action under this chapter. The commission may intervene in a civil action brought pursuant to this chapter if the case is of general importance.

which the complainant is not a party pursuant to section 12–46–15(d).

Under this regulatory scheme, the Executive Director's issuance of a notice of right to sue is the event that *potentially* leads to a civil action in lieu of an administrative hearing. The issuance of the notice of right to sue is not automatic and, even if issued, does not give the respondent the "authority" to remove the case from the agency proceeding.

Under HAR § 12–46–20(d), the Executive Director *must* issue a notice of right to sue if the complainant's complaint is dismissed or settled without the complainant's participation.

Under HAR § 12–46–20(b)(2), a *complainant* may request, in writing, a notice of right to sue before a finding of "reasonable cause."

Under HAR § 12–46–20(b)(3), *any party*, including a respondent may request, in writing, a notice of right to sue *within twenty days after receipt of the notice of election to file a civil action.* HAR § 12–46–14 provides that the Executive Director shall notify the parties of such an election in conjunction with his determination that reasonable cause exists "to believe that an unlawful discriminatory practice has occurred or is occurring."

Although it is not expressly stated, HAR § 12–46–20(c) appears to follow from a party's HAR § 12–46–20(b)(3) request for a notice of right to sue. It requires the Executive Director to issue a notice of right to sue if there is (1) no prior notice of right to sue and (2) no conciliation agreement to which the complainant is a party.

If a notice of right to sue is issued *before* a finding of reasonable cause, a real property discrimination *complainant* can file a civil suit. HAR § 12–46–20(a)(2).

If a notice of right to sue is issued *after* a timely HAR § 12–46–20(b)(3) request, pursuant to HAR § 12–46–20(a)(3), the Executive Director (only) is "authorized," but apparently not required, to file a civil suit. At no point in this process is a respondent authorized to simply "opt out" or remove the matter to circuit court.

■ Here, although it appears that the Executive Director attempted to serve Cara-

caus with, *inter alia*, the Complaint and a notice of finding reasonable cause, there is no indication in the record that the Executive Director provided or attempted to provide Caracaus with a notice of election to file a civil action. As the notice of finding reasonable cause was not made part of the record of the agency proceedings, it is not clear whether it would have included a notice of election to file a civil action. In any case, the Executive Director abandoned his attempt to serve Caracaus by publication, which may be permitted pursuant to HAR § 12–46–28, and, upon learning that Caracaus wanted to "take this matter to court", the Executive Director stated "by her participation to this point in these proceedings, [Caracaus] has waived any rights and is estopped from raising any procedural complaints … re service, etc."

On October 12, 2006, the same day that Wang emailed Caracaus concerning the procedure for a respondent to "remove" a case out of the administrative hearing process, the Executive Director took the position that "I will oppose any attempt by Caracaus to take this matter to court." Wang also informed Caracaus: "I believe that it may be too late for you to remove this case to a court. . . . I do not know if the Executive Director will issue a right to sue to you at this time."

In sum, although Wang informed Caracaus of the process by which Caracaus could request that the Executive Director issue a notice of right to sue, which would then authorize the Executive Director—not Caracaus—to initiate a civil action, and Caracaus clearly failed to make such a request, Wang did so only after the Executive Director abandoned his obligation to provide her with the notice of election, at the same time as the Executive Director was stating that he opposed removal to court and that Caracaus had already waived her procedural rights, and Wang was expressing her "belief" that it may be too late and the right to sue may not be issued. Under these circumstances, we are left with the definite and firm conviction that the Circuit Court clearly erred in finding that Caracaus implicitly waived, during the HCRC proceedings, her right to a jury trial on the issue of money damages. Although *reasonable conditions* may be placed

upon the fundamental right to a jury trial in civil cases, including rules and procedures affecting its exercise, the circumstances here, especially the Executive Director's opposition and declaration that Caracaus's procedural rights had been waived, made the right "practically unavailable" to Caracaus because there was no method to remove the case absent the Executive Director doing so, a course of action that he said he would actively oppose. *See SCI Mgmt. Corp.*, 101 Hawai'i at 451–52, 71 P.3d at 402–03.

■ Having concluded that Caracaus did not waive her right to a jury trial during the HCRC proceedings, we must consider whether it was waived thereafter, when Ramos appealed from the HCRC's decision declining to award damages against Caracaus. In *SCI Mgmt. Corp.*, the supreme court held, *inter alia*, that "after the conclusion of the HCRC proceedings, the [respondents] are entitled to a jury trial with respect to any common law damage claims for which they are found to be liable by the HCRC." 101 Hawai'i at 442, 71 P.3d at 393.

The supreme court's decision contemplated a post-agency jury trial only when the HCRC awards common law damages. *Id.* at 452, 71 P.3d at 403. In this case, however, the HCRC did not award any damages. Nevertheless, on review of Ramos's appeal, the Circuit Court awarded compensatory and punitive damages in the amount of $27,000 to Ramos and against Caracaus. The overriding principle clearly enunciated in *SCI Mgmt. Corp.* is that a *fundamental constitutional right* to a jury trial exists when a person is faced with substantial legal damages in a statutory discrimination action. We can conceive of no reasoned basis for concluding that a person has a fundamental constitutional right if the HCRC awards such damages, but no fundamental constitutional right if a court awards such damages. Thus, we must conclude that Caracaus was entitled to a jury trial with respect to Ramos's demand for substantial compensatory and punitive damages in the Circuit Court.

■ Finally, we must consider whether Caracaus waived her right to a jury trial by failing to make a timely demand in the Circuit Court. In a footnote in *SCI Mgmt.*

*Corp.*, the supreme court stated that, to avoid waiving his or her right to a jury trial, a respondent would have to file his or her request for a jury trial within thirty days of receiving the HCRC's final order. *Id.* at 452 n. 12, 71 P.3d at 403 n. 12. We need not determine whether, because that issue was not before the court in the declaratory judgment action, this footnote might be considered advisory, because the rationale for adopting a thirty–days–from–the–HCRC–decision deadline for jury demand does not apply when, as here, the HCRC did not award any damages.

Thus, we look to the rules governing appeals to the circuit courts to determine whether Caracaus failed to make a timely demand for a jury trial. *See generally Lii v. Sida of Haw., Inc.*, 53 Haw. 353, 493 P.2d 1032 (1972) (demand for jury trial must be made within the time period specified by the applicable rules; failure to do so constitutes a waiver). Rule 72 of the Hawai'i Rules of Civil Procedure (**HRCP**) governs appeals to the circuit courts. HRCP Rule 72(g) provides:

(g) **Trial by jury.** Where by law an appeal may be tried before a jury, the case shall be tried without jury unless any appellant or appellee shall have demanded trial by jury in the manner and within the time provided in Rule 38.

Rule 72(g) appears to be applicable, as the supreme court's decision in *SCI Mgmt. Corp.* constitutes "law" permitting a trial before a jury on an appeal from an HCRC proceeding. Thus, we turn to HRCP Rule 38, which provides in relevant part (emphasis added):

**Rule 38. Jury Trial of Right.**

(a) **Right Preserved.** The right of trial by jury as given by the Constitution or a statute of the State or the United States shall be preserved to the parties inviolate.

(b) **Demand.** Any party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefor in writing at any time after the commencement of the action and *not later than 10 days after the service of the last pleading directed to such issue,* and (2) filing the demand as required by

Rule 5(d). Such demand may be indorsed upon a pleading of the party. ***Where by statute** a jury trial is allowed on appeal to the circuit court from the prior determination of any court or administrative body, a trial by jury may be had if demanded in the notice of appeal, and if not demanded in the notice, the appellee may have a trial by jury by filing a demand within 10 days after the case is docketed in the circuit court.*

. . . .

(d) **Waiver.** The failure of a party to serve and file a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by the party of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

HRCP Rule 38(b) includes two different deadlines for a jury trial demand. If the demand arises in a civil action, which is initiated by a complaint, the jury demand is due within ten days of the last pleading directed to the issue that is triable to a jury. If the demand arises "[w]here *by statute* a jury trial is allowed on appeal", the appellant must file a jury demand with the notice of appeal and the appellee must file a jury demand within ten days after the case is docketed. Because the jury trial right in this case stems from a supreme court decision, rather than an original civil proceeding or a statute, it does not fit within either part of Rule 38(b).[13] Thus, we consider HRCP Rule 38(d), which deems failure to file a jury demand "as required by this rule and to file it as required by Rule 5(d)" to constitute a waiver of trial by jury. No other part of HRCP Rule 38 squarely applies and it appears that Caracaus complied with HRCP Rule 5(d), which requires filing with the court. Caracaus requested a trial by jury more than once in the circuit court proceedings, including: (1) in a September 25, 2007 "Statement of the Case . . ." filed in the Third Circuit Court; (2) in a September 4, 2007 "Opposition to Motion to Dismiss; Appellant's Statement of the Case . . ." filed in the First Circuit Court; and (3) in a Septem-

ber 26, 2007 "Amended Statement of the Case . . ." filed in the First Circuit Court.

In *Lii*, the Hawai'i Supreme Court discussed whether and how the constitutional right to a jury trial might be waived:

> We consider the right to a jury trial to be inviolate in the absence of an unequivocal and clear showing of a waiver of such right either by express or implied conduct. This court will indulge every reasonable presumption against the waiver of such right. However, the mechanics constituting a reasonable regulation of the manner of exercising that right must be complied with for the right to be preserved.

*Lii*, 53 Haw. at 355–56, 493 P.2d 1032, 1034 (citations omitted).

We must "indulge every reasonable presumption against the waiver" of Caracaus's right to a jury trial. Thus, we cannot conclude that there was "an unequivocal and clear showing of a waiver of such right either by express or implied conduct." Therefore, we vacate the Circuit Court's FOFs/COLs and remand for a trial by jury.

In light of the foregoing, we need not address the remaining issues raised by Caracaus on this appeal.

## V. *CONCLUSION*

For these reasons, the Circuit Court's July 2, 2008 Findings of Fact and Conclusions of Law are vacated and this case is remanded to the Circuit Court for further proceedings.

---

**13.** Absent a supreme court decision overruling *SCI Mgmt. Corp.,* it appears that an amendment to the HRCP Rule 38 is warranted to address this scenario.